#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **GEORGE CORTEZ, #M12004,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| vs. | ) | Case No. 3:19-cv-01238-SMY |
| | ) | |
| **WEXFORD HEALTH SOURCES, INC,** | ) | |
| **DR. SIDDIQUI,** | ) | |
| **DR. SHAH,** | ) | |
| **HOLLY HAWKINS,** | ) | |
| **ANGELA CRAIN,** | ) | |
| **JACQUELINE LASHBROOK,** | ) | |
| **AMY LANG,** | ) | |
| **JOHN BALDWIN,** | ) | |
| **JOHN DOE #1, (IDOC Medical Director),** | ) | |
| **ROB JEFFREYS,** | ) | |
| **ILLINOIS DEPT. of CORRECTIONS,** | ) | |
| **ANTHONY WILLIS,** | ) | |
| **RON SKIDMORE, and** | ) | |
| **ANTHONY WILLS, WARDEN OF** | ) | |
| **MENARD  CORRECTIONAL CENTER,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff George Cortez, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center ("Menard), filed this lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights.  He asserts violations of the Eighth Amendment and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., and seeks monetary damages and injunctive relief.

Plaintiff's First Amended Complaint (Doc. 13) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.  That statute requires the Court to screen prisoner Complaints to filter out non-meritorious claims and to dismiss any portion of the Complaint that

is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant.  28 U.S.C. § 1915A(a) & (b).

## The First Amended Complaint

Plaintiff makes the following allegations in the First Amended Complaint (Doc. 13):  Since 2015, Plaintiff has suffered from several serious medical conditions, including osteoarthritis, insulin dependent diabetes mellitus, iron deficiency anemia, chronic kidney disease, acute gastritis with hemorrhage, hypertension, and chronic pain.  (Doc. 13, p. 4).  He underwent a total hip arthroplasty and subsequently had additional surgeries due to infection and other complications.  (Doc. 13, pp. 4, 9-10).

Wexford Health Sources, Inc. ("Wexford") has deliberately understaffed the Health Care Units in all Illinois correctional facilities and implemented policies where medical care decisions are made based on cost.  These practices caused Plaintiff to be denied adequate medical care and pain relief.  (Doc. 13, pp. 3-7).  Plaintiff was repeatedly sent back to the same doctor who did his original hip surgery that "went wrong" and each time this doctor performed another "corrective" surgery, Plaintiff's condition became worse.  Plaintiff's requests to be referred to a different surgeon were denied.  (Doc. 13, pp. 9-11).  Plaintiff has been in a constant state of pain since 2015.  His pain medication has not been timely delivered and has lost effectiveness.

Nurse Amy Lang refused to give Plaintiff his prescribed medication on several occasions.  (Doc. 13, p. 12).  Plaintiff filed grievances which put Defendants Wexford, Siddiqui, Shah, Crain, Hawkins, Lashbrook, and Willis on notice that his pain medication was denied, but these Defendants took no action to correct Lang's misconduct.  (Doc. 13, pp. 12, 14).

Plaintiff spoke several times to Nursing Supervisor Skidmore about the medication denial.  Plaintiff also complained to Skidmore that the pain medication he received was being dissolved in

water before it was given to him which made the medication ineffective to relieve his pain. However, Skidmore did not change this method of delivery. (Doc. 13, pp. 15-17). Siddiqui, Crain, Shah, Lang, and Hawkins likewise told Plaintiff to stop complaining about the dissolved medication and ignored Plaintiff's complaints of pain. (Doc. 13, p. 18). Lashbrook, Willis, Jeffreys, and John Doe #1 (IDOC Medical Director) ignored or denied Plaintiff's grievances over the matter.

As a result of Plaintiff's medical conditions, he is disabled and unable to climb or descend stairs. (Doc. 13, p. 19). He has been issued medical permits for low gallery, low bunk, and a cane. However, he is not allowed to have his cane in his cell and has nothing to hold onto for balance. (Doc. 13, p. 20). He often is not permitted to use the cane for walking outside the cell. He cannot access the shower in his cell house because it lacks handrails. (Doc. 13, p. 27). Menard is not designed to accommodate Plaintiff's disability and he is forced to use the stairs against doctor's orders if he is to access sick call which causes pain. (Doc. 13, pp. 19-21). Baldwin, Lashbrook, Willis, and Jeffreys require inmates to be handcuffed when going to medical or mental health call. (Doc. 13, pp. 22-23).

Dr. Siddiqui told Plaintiff that his disability and mobility issues cannot be accommodated and his medical problems cannot be adequately treated at Menard because of Wexford's and the Menard administration's restrictions on certain medications and treatments. (Doc. 13, p. 24). Plaintiff's requests for a transfer to another prison have been denied; he believes the reason for the denial is that he filed grievances over inadequate medical care. (Doc. 13, p. 26).

Severe overcrowding at Menard (allowed by Lashbrook, Willis, Baldwin, Jeffreys, and John Doe #1) and Wexford's deliberate understaffing have caused Plaintiff to be denied medical care. (Doc. 13, pp. 29-33). His medical passes have been cancelled due to overscheduling, and

there are lengthy wait times to see the eye doctor or obtain dental care. (Doc. 13, pp. 30-31). Also due to overcrowding, Plaintiff was housed in a single-person cell with another inmate, leaving too little space for exercise or walking in the cell. (Doc. 1, p. 33). He was also placed with a known violent cellmate who severely beat him. (Doc. 1, p. 34).

Plaintiff seeks injunctive relief to accommodate his disability, transfer to Dixon Correctional Center, and placement in a single cell while at Menard. He also requests monetary damages. (Doc. 13, p. 35).

Based on the allegations in the First Amended Complaint, the Court designates the following claims in this *pro se* action:

| | |
|---|---|
| Count 1: | Eighth Amendment deliberate indifference to serious medical needs claim against Wexford for maintaining policies to deliberately understaff all IDOC health care units and to deny medical care based on cost, that led to the denial of medical care for Plaintiff's serious medical conditions and pain. |
| Count 2: | Eighth Amendment deliberate indifference to serious medical needs claim against Siddiqui, Shah, Crain, Lang, and Wexford for sending Plaintiff to the same outside surgeon for follow-up care despite Plaintiff's request for referral to a different provider after complications arose from his hip surgery. |
| Count 3: | Eighth Amendment deliberate indifference claim against Lang for refusing to give Plaintiff his pain medications, and against Wexford, Skidmore, Siddiqui, Shah, Crain, Hawkins, Lashbrook, Willis, Jeffreys, Baldwin, and John Doe #1 for failing to correct Lang's misconduct. |
| Count 4: | Eighth Amendment deliberate indifference claim against Skidmore, Siddiqui, Shah, Crain, Lang, and Hawkins, for requiring Plaintiff to take his pain medication after the pills had first been dissolved in water, and for ignoring his complaints that his pain medication was no longer effective to relieve his severe pain. |
| Count 5: | Eighth Amendment deliberate indifference claim against Lashbrook, Willis, Jeffreys, and John Doe #1 for ignoring or failing to address Plaintiff's grievances complaining that he was denied adequate medical care. |

Count 6: ADA and/or RA claim against the IDOC, Baldwin, Lashbrook, Willis, Jeffreys, Wexford, Siddiqui, Crain, Skidmore, Hawkins, John Doe #1, and Shah for failing to accommodate Plaintiff's mobility-related medical conditions and pain.

Count 7: Eighth Amendment and/or First Amendment claim against unidentified Menard officials for failing to grant Plaintiff's request(s) for transfer to a different prison where his medical needs and mobility problems can be accommodated.

Count 8: Eighth Amendment deliberate indifference claim against Wexford, Lashbrook, Willis, Baldwin, Jeffreys, and John Doe #1 for housing Plaintiff in overcrowded conditions at Menard, which limited his access to health care providers, caused him to be housed with another inmate in a cell designed for only one person with insufficient space to exercise or walk, and led to Plaintiff's cellmate attacking and seriously injuring him.

Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

## Discussion

### Count 1

Wexford is a corporation that employs the medical-provider Defendants and provides medical care at the prison. It cannot, however, be held liable solely on that basis. A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). Here, Plaintiff alleges that Wexford has deliberately understaffed prison health care units and that it has

a policy/practice of denying medical care in order to cut costs. He also alleges generally that these policies/practices caused him to be denied adequate medical care and pain relief. However, Plaintiff does not connect these allegations to any particular instances or examples of a Wexford employee who acted, failed to act, or denied him a treatment, referral, or procedure. Therefore, the claim in Count 1 does not survive preliminary review under Section 1915A and will be dismissed without prejudice.

### Count 2

Prison officials and medical staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted or failed to act with deliberate indifference to the risk of harm from that condition. *Id.*; *see also Farmer v. Brennan*, 511 U.S. 825, 842 (1994). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Medical negligence or even malpractice does not violate the Constitution. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001).

Plaintiff alleges that sending him back to the same surgeon whose performance caused him to develop an infection and other complications after his earlier hip surgery violates the Eighth Amendment. But these allegations are insufficient to state a colorable claim for deliberate indifference. Count 2 will therefore be dismissed without prejudice.

**Count 3**

Plaintiff's allegation that Nurse Lang deliberately refused to him his prescribed pain medication is sufficient to state a deliberate indifference claim, as is his allegation that he personally spoke to Nursing Supervisor Skidmore about the failure to provide his pain medication. Plaintiff may therefore proceed on his claim in Count 3 against Lang and Skidmore.

Plaintiff also alleges that his written grievances against Lang put Wexford, Siddiqui, Shah, Crain, Hawkins, Lashbrook, Willis, Jeffreys, Baldwin, and John Doe #1 on notice that he was not receiving the medication, but they deliberately turned a blind eye to the problem and did nothing to stop Lang's misconduct. (Doc. 13, pp. 12-13). Plaintiff also relies on an allegation that unspecified "other inmates" have written numerous grievances against Lang for failing to provide medications, and that Lang is a defendant in several other pending lawsuits involving this issue. He claims these Defendants were supervisors over Lang and therefore had the power to stop her denial of medical care.

"[D]eliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). Here, Plaintiff provides no factual allegations to support his assertion that these Defendants received notice of his complaints against Lang. He does not claim to have directly informed any of them of the issue, and he does not supply any documentation to show that they received actual notice of his problem. These Defendants cannot be held liable for Lang's conduct simply based on their supervisory positions. "The doctrine of *respondeat superior* (supervisory liability) does not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d

612, 651 (7th Cir. 2001)).

For these reasons, Count 3 will be dismissed without prejudice as to Wexford, Siddiqui, Shah, Crain, Hawkins, Lashbrook, Willis, Jeffreys, Baldwin, and John Doe #1, and will proceed against Lang and Skidmore for deliberate indifference to Plaintiff's need for his prescription pain medication.

## Count 4

Plaintiff cannot maintain a deliberate indifference claim based on the medical decision to administer his medication by dissolving the drugs in a cup of water. However, Plaintiff also alleges the Defendants ignored his complaints of pain when his medication failed to relieve his symptoms. "[T]he existence of chronic and substantial pain" is a serious medical need, *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997), and the failure to take reasonable steps to relieve an inmate's chronic pain may constitute deliberate indifference. Thus, Count 4 shall proceed against Skidmore, Siddiqui, Crain, Shah, Lang, and Hawkins.

## Count 5

Plaintiff alleges he wrote grievances and letters to Lashbrook, Willis, Jeffreys, and John Doe #1 about "how he was being denied adequate medical care" and they either ignored him or responded without addressing his issues. To be held individually liable, "a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Here, Defendants who merely responded to Plaintiff's grievances, or failed to address them, were not "personally involved" in the alleged denial of adequate medical care.

8

Accordingly, Count 5 will be dismissed without prejudice.

## Count 6

Plaintiff's allegations are sufficient to allow him to proceed on an ADA and/or RA claim for failure to accommodate his mobility restrictions and related pain. However, this claim cannot proceed against individual defendants; individual employees of IDOC cannot be sued under the ADA or the RA. *Jaros v. Illinois Dep't of Corrs*, 684 F.3d 667, 670 (7th Cir. 2012). The proper defendant is the relevant state department or agency. See 42 U.S.C. § 12131(1)(b); *Jaros*, 684 F.3d at 670, n. 2 (individual capacity claims are not available; the proper defendant is the agency or its director (in his official capacity)). Plaintiff has included the IDOC as a Defendant and Count 6 may properly proceed against this state agency. However, Count 6 is dismissed as to Baldwin, Lashbrook, Willis, Jeffreys, Wexford, Siddiqui, Crain, Skidmore, Hawkins, John Doe #1, and Shah.

## Count 7

Plaintiff's allegations suggest that the denial of his request for a transfer to a different prison were motivated by retaliation for his grievances and complaints over deficient medical care. (Doc. 13, pp. 26-27). Prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement; this activity is protected by the First Amendment. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) (retaliatory delay in transferring prisoner). However, Plaintiff fails to identify the individual(s) who denied his transfer request, and a plaintiff is required to associate specific defendants with specific claims so the defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Hoskins v. Poelstra*, 320 F.3d 761, 764

(7th Cir. 2003). For these reasons, Count 7 will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

## Count 8

Plaintiff alleges that Lashbrook, Willis, Baldwin, Jeffreys, and John Doe #1 allowed overcrowded conditions to persist at Menard and that Wexford deliberately understaffed Menard's health care unit in relation to the number of inmates in the prison. He further alleges that as a result, his access to a doctor for his hip problems was delayed when his passes were cancelled, that he had to wait 30 days or more for an eye doctor appointment, that he sought dental care and was told there is a 2-year wait for teeth cleaning, a 30-day wait for fillings, and a 60-day wait for non-emergency dental issues, and that he must see a nurse, not a doctor, for his chronic diabetes and hypertension clinic visits. Finally, he alleges because of the overcrowding, he could not be matched up with a cellmate of similar age, size, or medical history and was housed with a violent cellmate in a too-small cell and was physically attacked by that cellmate.

As to the medical care issues, Plaintiff does not provide facts indicating that he was harmed because of the delays he experienced due to the alleged overcrowding and understaffing. And, his generalized claim that the Defendants are responsible for overcrowding at Menard does not sufficiently plead an Eighth Amendment violation. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). To state a constitutional claim, an inmate first must allege facts suggesting the prison conditions amount to a serious deprivation of basic human needs such as food, medical care, sanitation, or physical safety, creating an excessive risk to the inmate's health or safety. The allegations must also suggest the defendants acted or failed to act despite their knowledge of a substantial risk of serious harm to the plaintiff from the conditions. The First Amended Complaint does not meet these standards.

With reference to the attack on Plaintiff by his cellmate and the crowded cell conditions, Plaintiff does not identify the individual(s) who made the decision to place him in that cell, nor does he claim that he complained to any prison official about the conditions or any threat posed by the cellmate. Plaintiff must identify the Defendant(s) responsible for the cell placement and/or the failure to change Plaintiff's cell assignment and set forth facts supporting a deliberate indifference claim against such person(s).

As presently pled, Plaintiff fails to state a cognizable Eighth Amendment claim against Wexford, Lashbrook, Willis, Baldwin, Jeffreys, or John Doe #1 in Count 8 and it will be dismissed without prejudice.

## Injunctive Relief

Because the First Amended Complaint includes a request for injunctive relief, Anthony Wills, Warden of Menard Correctional Center, in his official capacity, will be added to the docket with regard to this request. *See Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (holding warden is proper defendant for injunctive relief claim as he would be responsible for ensuring that any injunctive relief would be carried out).

## Official Capacity Claims

Plaintiff raises claims against each Defendant in his or her official capacity for injunctive relief, and in his/her individual capacity for monetary damages. (Doc. 13, p. 35). The ADA and RA claims are properly brought against the IDOC, and the injunctive relief claims are properly brought against the Warden of Menard Correctional Center in his official capacity. However, Plaintiff's claims for monetary damages may only be pursued against state officials in their individual capacities. *Brown v. Budz*, 904 F.3d 904, 918 (7th Cir. 2005); *Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir. 1987). Accordingly, the official capacity claims against the individual

Defendants are dismissed without prejudice.

## Disposition

Portions of the First Amended Complaint survive preliminary review under 28 U.S.C. § 1915A and shall proceed for further consideration as follows:  **COUNT 3** proceeds against Lang and Skidmore only; **COUNT 4** proceeds as delineated above; and **COUNT 6** proceeds only against the IDOC.

**COUNTS 1, 2, 5, 7,** and **8** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.  **COUNT 3** is **DISMISSED** without prejudice as against Wexford, Siddiqui, Shah, Crain, Hawkins, Lashbrook, Willis, Jeffreys, Baldwin, and John Doe #1.

Defendants **WEXFORD, LASHBROOK, BALDWIN, JOHN DOE #1, JEFFREYS,** and **WILLIS** are **DISMISSED** from the action without prejudice.

The Clerk of Court is **DIRECTED** to **ADD ANTHONY WILLS**, **WARDEN OF MENARD CORRECTIONAL CENTER**, in his official capacity only, to the docket for purposes of Plaintiff's claim for injunctive relief.

The Clerk shall prepare for **SIDDIQUI, SHAH, HAWKINS, CRAIN, LANG,** the **ILLINOIS DEPARTMENT of CORRECTIONS, SKIDMORE,** and **ANTHONY WILLS**, **WARDEN OF MENARD CORRECTIONAL CENTER** (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the

Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the First Amended Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance

Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED: January 27, 2021**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your First Amended Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your First Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.